Appellant. Ms. Davis for the appellant, Mr. Staple for the appellee. Good morning. May it please the court. The first issue I think I should address is whether there was a waiver of the appeal in this case. This court has obviously held that waivers can be enforced if it's knowing and if it's a knowing waiver and voluntary. But this court has not has also held that when the district court's rule 11 colloquy on the record differs from the written waiver, then this court will allow the appeal to go forward. In this case, the judge said... You may not have been stating Godoy exactly right, but I get your point. It's not that it was different. It's a mischaracterization. I think in this case, the judge said you may under some limited circumstances have a right to the appeal to appeal the court's sentence. And that was right, exactly. There were limited circumstances under which you could appeal number three, right? Right. So what was wrong about that? But then the court went on to say you have the right to appeal the court's sentence even though you're waiving your right to appeal under the grounds of reasonableness. So I mean, I will at the very least, I think this is ambiguous because the court advises the defendant that he basically can appeal under grounds of reasonableness. And I think other... Is there anything ambiguous about the written plea agreement? No, no. There is nothing ambiguous. So your case rests entirely on the nature of the colloquy? Exactly. So if we disagreed with your characterization of the colloquy Well, I think at most... You have nothing here. Exactly. But I think at most it's ambiguous. And this court has held in numerous cases... Haven't we? That ambiguity's enough? I thought we held that... The Hunt case said the appeal is not part of the waiver. In the Hunt case, the written waiver itself was also ambiguous. Right. But if the written waiver... And you just said we don't have a I understand your case. It rests entirely on the waiver issue. It rests entirely on whether we think that the colloquy mischaracterized the fundamental nature of the waiver. Exactly. And I think if what the judge says isn't strictly clear, which I think in this case it wasn't, that this... I don't think strictly clear is the legal standard that's been required. I think if it's ambiguous, that the appeal should be... Did it mischaracterize? Right. Exactly. And so that is my argument on waiver. Getting to the sum and substance of the argument is whether the sentence itself was unreasonable. The argument below... You didn't raise the waiver issue in your opening brief. No, I did not. Why? Because I think that's the government's position to do it. There's been cases where the government totally misses an argument, a waiver argument, and they basically at that point have... They waive that issue. I don't think it's the appellant's position to raise an issue that is... Did you have any cases that support that? Not off the top of my head, but if the court has a position that it just follows from the nature of the waiver as something that's a defense for the government to assert. It's not jurisdictional. It's something that has to be asserted. Right. They have to assert it. And once they've asserted it, then you respond. And then I respond. There's a good case for you in the Third Circuit that maybe the government will address, the Goodson case, which says exactly what you're saying. Oh, good. Something says something you're saying. But it's only the Third Circuit. No. Well, for what it's worth, in Frye and Godoy and some of our prior cases, we had the exact same procedural scenario where it wasn't raised in the opening brief. So even if not ruled, it was at least the practice. Going on to my main issue is whether the sentence was unreasonable. It was raised below that the defendant should be sentenced to a lower sentence because of the problem of disparate sentences. Mr. Matea's counsel cited numerous cases where there have been variances from the guideline sentences. And indeed, the probation department, in their recommendation that was made to the judge, recommended the mandatory minimum sentence. And it was a minimum of 60 months. Can we back up? The process in this case is a little mystifying. Why wasn't this case prosecuted in West Virginia? I don't know, Your Honor. I can ask the government. And in terms of the calculation, there is some, and again, maybe this is a question for the government, but there is some suggestion by defense counsel at trial that there was a policy change by the U.S. Attorney's Office? Where they used to charge cases with facts substantially similar to this, where there was possession and some distribution to an undercover. It would charge them as possession. Was there a policy change that you're aware of? Do you know the nature of it when it was made public? From my understanding, little there was in the transcripts concerning this, is at one time the government would routinely give pleas to possession. But there was a change in policy, and they would charge a case as distribution, and they would go along with the sentencing guidelines regarding distribution. But that's not a policy that's made public that you're aware of? No, not at all. It was just something. Gathering that as I am from the record and discussion. Right, and I think as the parties went forward, they at first thought that it was going to be a mere possession case, but then that switched around. And you mentioned that the initial guidelines range suggested here was like 63 to 78 months, and that it was changed. And I thought the change actually came from the probation office. I think it was the probation office that said that they would determine the guidelines based on distribution and all the various enhancements. And that was the change that the defense had to deal with going forward. That the sentencing guidelines, as determined by probation, would be vastly different. So it's not the U.S. Attorney's Office that determines the guidelines range? It's the probation office? The probation office does the calculations. I believe the government agreed with the calculations as done. Although, initially, I don't think that was government's intent in this case. So moving on, I think that in this case, the judge did not cite any reasons for not granting the downward variance. The judge stated all these cases. I thought he said he thought this case was unique and different. And there were images of toddler and infant abuse that he thought made them different from the other cases. Am I wrong? Am I wrong? Well, I think he mentioned a number of things, the age of the child, the number of images. I think there were a whole litany of them. He thought that in his judgment they were particularly egregious because of the ages and the nature of the images. Right, that this case was totally different from any other case because it had all these additional factors. But based on my research and I think the sentencing guidelines of the Sentencing Commission, all of the factors that the judge relied upon were found in the majority of the cases, distribution cases. And those included images of prepubescent minors. Well, prepubescent in toddlers. Infants is different, right? It is. It is. Well, I don't know the breakdown. I only know prepubescent minors. That's what the guidelines do. But the district court here said this is worse than what's already, you know, worst of the worst. And that is toddlers and infants being used. But at the same time, there was no travel in this case where there are in other cases. There are a number of things that, and again, I don't know what the exact figures are for toddlers and infants. The point here, and we're not trying to make the sentencing decision ourselves in the first instance here. The point here is that you said the district court gave no reason. And I think what Judge Griffith was referencing and I'm referencing is that the district court did give reasons. Right, but I don't think the facts support the reasons given. You don't dispute the facts about the infants and toddlers abused. Well, I think there were some images that included that. But the actual subject of the case was a 10-year-old, not an infant or a toddler. When you do this, tell me how disparity analysis is supposed to work in your view. I'm really quite lost about it because does it mean we look at disparities within this judge's sentencing, within this district's sentencing, within this region's, within the nation? What is the comparison point and how does it work? Do you just deliver a pile of cases to the judge and then the judge has to march through every one of those and say, that's different, how? I have no idea how this disparity analysis is supposed to work. Well, I don't either, exactly. No, but you're asking for a decision in your favor here, so we would have to have some understanding of what steps went wrong. And until I know how it's supposed to work, I can't figure out if anything went wrong. Well, initially, I think a sentencing judge has to look at what's going on in the district. And I think that's the first step. And then to consider if what's happening in the district is an anomaly or is it happening across the country. And how's the district court judge supposed to do that? By reading the sentencing memorandum. The sentencing memorandum set forth numerous cases where there are facts far more egregious than in this case. Well, but 3553A assumes the court's going to do it on its own anyhow, so is the district court supposed to sit down and obtain this information? I mean, if you had an attorney who just forgot to put it in the sentencing memorandum, would the district court still have an obligation to ensure an absence of disparity in sentencing? I think so. Okay, so then how's it supposed to work? Well, I don't think the district court has to consider disparity unless it's raised. And I think once it's raised... You don't mean 3553A is automatically identifying it as one of the things the court's supposed to consider? I think it has to be raised. I don't see how a judge can... Okay, so here Judge Leon said, you know, I have a lot of experience with these cases. Some of the cases that were sent in the sentencing memorandum were his own cases. And he said, you know, yeah, I understand there's some similarities, but there are also real differences. And what he did really focus on were the things that he was the most concerned about here. One was the nature of some of the images. But as I read the transcript, I thought the thing that he was most concerned about was what he characterized as a real refusal to accept responsibility, saying it would never cross my mind to actually seek to have a sexual encounter with a minor. And Judge Leon said, what are you talking about? You were in the process of arranging that. And that really, as I read the entire transcript, including his initial rejection of the description of the offense and on to the end, that that was really the thing that made him concerned and that animated the sentence. Is that not a valid reason for distinguishing this case on its facts from other cases? Well, I would note that there was evidence. There was a report submitted to the judge for consideration by an expert who interviewed Mr. Matea. And she determined that he was sorry for what he did, explained reasons for what he did, such as his depression, his alcoholism. And she thought he would be better served by treatment as opposed to a lengthy incarceration. I've heard enough questions. But I think that there was something there for the judge to consider. The judge pretty much outright did not consider it because he did not quite understand what the expert's qualifications were. And I think he mentioned, well, she doesn't have a Ph.D. or something like that. And I don't think that is a proper reason to out of hand. But we got on to this when we were talking about whether the judge had adequately taken account of the concerns about disparity among sentences. And so the question is, is it not an implication of the judge's engagement with the facts of a particular case and the judge's experience with other similar cases that the judge has at least gone part of the way toward explaining why here not a downward departure where there might be in another case? Well, I don't think that I don't think that the judge thoroughly considered what was going, about the evidence that was presented. And at the same time, there was nothing put forward as far as acceptance or, I don't know, any acceptance by any of the defendants and whether they were accepting responsibility. In the other cases. If you were to point to, there were so many cases that were presented by the case counsel in the district court. If you were to identify that one, two, three, four cases that you think are the most analogous to this one that are the most troubling in terms of why is there a disparity, which cases would you point to? I would point to the cases where there was basically there was distribution, but the defendants would get a mandatory minimum five-year sentence. There were cases where the conduct was far more egregious. There was a person who traveled from France to the United States to have sex with a child. And that person received a below-guideline sentence. How old is the child in that case? I believe twelve. And in this case, we're dealing with a ten-year-old. So it's not hugely different. But then there was also travel from France to the United States to have sex with a twelve-year-old. Kind of a big deal, I think. In this case, there was no travel from West Virginia to the District of Columbia. And there was, although there was some indication that Mr. Matea had been involved in other conduct with young children, that turned out to not be true. It could not be verified. And that was one of the reasons that the judge would not accept the plea early on, because that language was in the plea agreement. I'd be interested to know, maybe on rebuttal, if you just name for us the cases that you think are the most troubling in terms of, I mean, you identified the France case, but if you would just really tell us which of the cases that you think the district judge would have to kind of belly up and deal with. Can you point to any case in this circuit where we found a within guidelines sentence is substantively unreasonable under the... Do you have a case from another circuit? Yes. I believe it was the United States v. Page 8. And there the court reversed a within guidelines sentence as unreasonable based on the statistics of the enhancements that were present. But that case seems to be, so that gets back to the problem of, you know, we've said in Frye that it seemed to be there sort of disagreeing with the guidelines, because in all the cases involved is, all the cases involved that, that seems to be the rationale there. But we said in Frye that courts can make different choices on these sort of policy disagreements about the guidelines. So that kind of disparity can't count, right? Right. And I think a lot of the cases cited in the sentencing memorandum were cases where there was, you know, the you can't use policy as a... But we're dealing here with the inverse situation. There's no question, I don't think, under our precedence, that the district judge who chooses to depart downward because of concerns that there's double counting and that by the enhancements or other reasons that they have discretion to do that. But we're dealing with the inverse question, which we also dealt with in Frye, which is where the district judge does not so choose, but chooses as here to sentence within the range, albeit at the bottom end of the range. Is there precedent that we as a reviewing court could nonetheless look at that within guidelines sentence and say, unreasonable, we require that it go below the range? Again, I'm not familiar with anything from this circuit, but there is the Second Circuit case where they did exactly that. And no further questions. We'll give you some time back on the panel. You're from the government now. Good morning. May it please the court, David Sable on behalf of the United States. If I may, just on a few quick matters, the court asked a couple questions. Perhaps I can help on these. The case was prosecuted in D.C., much like the Frye case was prosecuted in D.C. because a person in another state distributed images to an undercover officer working in D.C., Officer Detective Palchak. So that's why the case was prosecuted in D.C. The case was prosecuted in D.C. because a person in another state distributed images to an undercover officer working in D.C.  And so the relevant conduct under the guidelines must be all of those images. And so that's why the guidelines have to be what they are. They could not be the earlier amount, which was 63 to 78. And I have a question about that, but just going to the other question I had about the policy change, that some of the cases in D.C. that involve really substantially similar conduct, where you have someone responding to the undercover by sending some images, but the government charges that as a possession and gets the inventory in under that, and that starts at a baseline 18 rather than a baseline 22. Was there a policy change? Well, the court's asking about something that's not in the record, but if the court's asking about something that's not in the record. I don't believe so, Your Honor. I think the discussion at the initial hearing, at the arraignment, had to do with the initial plea offer and why the initial plea offer wasn't being offered. And then I'm looking at July 12, page 6, Your Honor. And then the magistrate judge said, you know, I'm not taking this plea offer to 151 to If the court wants me to answer the question, I'll certainly answer the question. I'm just pointing out that I'm not aware that it's in the record. Well, I was just reading the record, and I don't know anything beyond this. And this defense counsel, who obviously isn't in the position that you are in to know, but he says, I think my understanding is the United States Attorney's Office changed their position with respect to cases like Mr. Matea's, where in prior instances they went forward with just the possession charge as opposed to the distribution charge. Okay, so I'm wrong. There was a time where in some cases a case would be, a plea offer would be made to possession instead of distribution in a distribution case. But of course, Your Honor, the relevant conduct, which is what drives these guidelines, is the same. The relevant conduct has to be all of the images. It can't just be. No, no. I mean, here's a question. So if you start with a baseline 18 and then start adding enhancements, the relevant baseline for possession, you're starting lower than the relevant 22 for distribution. So the very starting point here seems to be based on the prosecutor's choice. And it sounds from the record a little bit based not even on the prosecutor's choice, but in some way, well, I guess they chose to charge it as distribution, but then it ends up coming out differently than the assistant U.S. attorney thought based on what the probation office comes back with. I'm just trying to understand how this whole, the baseline is chosen and the adding on happens. So is there a policy change or is it case specific? Or why this case being charged the way it is in the other cases charges possession? I can't say more about it than this. This isn't a, the government, there was a practice. I don't know about a policy change. There was a practice. There certainly has been a policy change under this attorney general. But my understanding is that the change in practice preceded that. In any case, the government has, does try to obtain a plea offer to the lead charge. In that case, in this case, it would be distribution. The starting point for the base level for the guidelines may be different as the court's pointing out, but the relevant conduct is still going to be the same. Okay, now let's talk about relevant conduct. The amount of images. Right. What's the theory here? Because you know that there are cases, for example, in the Fifth Circuit that Edith Jones' opinion and then the prior, this Fowler opinion and, this will be my mind, but there are at least two opinions in the Fifth Circuit where the court said, no, possession is not necessarily related to distribution. And I'm not aware of any evidence in this case that shows that this possession was related to the distribution. Is there, do you have a theory on that? Well, Your Honor, that's a, you're advancing an argument that I'm not familiar with. Certainly has never been raised in this, by the parties in this case, was never broached as far as I'm aware on the record. Maybe the court's going to prove me wrong a second time, but I'm not aware of that, nor am I familiar with the Fowler case. Certainly what we do know is that this appellant sitting in Nitro, West Virginia had a collection of child pornography, met Detective Palchak posing as an undercover officer with a 10-year-old, fictional 10-year-old daughter, and he sent him distributed images from his collection to D.C. So, to me, that is a connection. Well, so, and the other case was Twishler case, 689 F3rd 397, and the underlying case is Fowler. And one of the things that the court, that the Court of Appeals raises there is, can you say it's connected, it's relevant conduct, where there was a time lapse between the crime, the distribution of the images to the undercover, and the arrest and search that found the inventory. We don't actually know whether that inventory was possessed at the time of the offense, so we don't know whether the pulling out of the inventory was that inventory. And if we don't know that, then what is the theory of connection? Well, again, Your Honor, the court, with all due respect, is in a position where I think we're speculating here about that. What we do know is that the search warrant is... Right, we'd like to have evidence in the record that the government made the case for relatedness. The probation department calculates the guidelines. An arm of the court calculates the guidelines as they are obliged to do. No objection was ever raised about this. If there are gaps in the record, it would be an appellant's obligation at this point to fill in those gaps, because this is a claim that has never been broached before. But the correct calculation of the guidelines is a basic obligation of the district court, and it's a basic obligation with the assistance of the parties. So I'm just trying to understand. We get a lot of these cases, and as you know, it's very serious, egregious, and frankly revolting conduct and very frightening conduct that these defendants are engaged in. I understand that, and I have no question that this individual has been validly sentenced to a term of imprisonment. The question we're asking is whether the length of the term of imprisonment is appropriate. And the thing that really drives that is what has become this administrative process that is largely in the hands of the U.S. Attorney's Office and the Probation Office. And we as courts are asked to supervise it, and I feel like in order to responsibly supervise it, we need to understand how it works. With respect, Your Honor, I very much disagree with what the court just said. This judge, this court, made five specific factual findings that no one has suggested are clearly erroneous. He found that the collection was particularly egregious because it contained images of toddlers and infants. He found, second, that Appellant had expressed an interest in having sex, of traveling to D.C. to have sex with a 10-year-old girl. He found that Appellant was interested, asked the undercover officer to have sex with this 10-year-old girl and send him the video. He found that the Appellant had denied his sexual interest in children and that for that reason he was a high risk to recidivate. He found that in this case, this Appellant was not going to be prosecuted and obtained the benefit of not being prosecuted for possession in West Virginia. I don't think you're disagreeing with me at all. I think I agree with everything you just said, but I don't think you addressed my underlying question. I absolutely, I see all of those things in the record. So the question is, just looking at the process by which the choices are made that get us to this sentencing guidelines range. I'm sorry, Your Honor. I apologize if I overspoke. So, my question is, if we're looking at the enhancements, we have to ask about the validity of them, and I know that we're here on plain error review because these issues were not vetted in the lower court. When there's an enhancement for sadistic or masochistic conduct, is it the government's position that the three images that were sent to the undercover were sadistic or masochistic? No. So that enhancement is based on inventory. I think logically that would have to be true, yes. But again, we're talking about facts that are not in the record. Certainly, I think, Your Honor, if the court were concerned on plain error review, it could look at the images recovered from the investigation, and that would seem to nail that one down pretty explicitly. We also know that the window is only a few days between the search warrant and the distribution. I thought it was several weeks. I would have to check the record. I thought it was only a couple days, Your Honor. But again, I want to emphasize, Judge Leon sentenced this defendant, appellant, on the facts. He made these factual findings. That was what was paramount to him. An appellant agreed. He agreed in writing and orally at the plea hearing that this guideline was reasonable. It wasn't just the waiver. He agreed that this guideline range was reasonable, and the sentence was at the bottom of the guideline range. I understand that, and I think you have very strong points there, and I'm not seeking to imply otherwise. Can I ask one, just because you're out of your time here, just one quick thing. Can I just get the government's view on how disparity analysis is supposed to work? What is the relevant comparator range? I just don't know. Are you comparing for that judge, for that district, for that circuit, for that nation? It's not clear how it's supposed to work. It's not clear to me, and it wasn't clear to the district court. The district court said, okay, you've given me a bunch of cases with squib descriptions of them. I know some of these, and I'm familiar with them. But you guys do this all the time. The government must have some view on the frame of references. I read the 3553 as requiring the district court to do this on its own, to make sure the sentence is not disparate. But I've got to assume that that doesn't mean the district court has got to sit on Westlaw and find every case in the country. Probably not every case even in the circuit or the district. Or read 50 PSRs. I don't know how to answer a question about disparity if I don't know how it was supposed to have been analyzed. I suppose you could look at what the Sentencing Commission has said, and if you were to take those comparisons, the Sentencing Commission, I believe, said in their 2012 report that, and they were talking again about possession cases, not distribution, and they were also talking about cases in which there was no sexual activity. I'm looking at a generic question here about how disparity works. I'm trying to get to the court's question. I think the figure was 60-some percent of the courts in those circumstances are varying downward and 30-some percent are not. Is that a disparity or not? I don't know. I mean, we would say no, this is a matter on which reasonable jurists can and do disagree. The Supreme Court said in Kimbrough when they said policy variances are appropriate under Booker, they said we recognize that we're going to have additional disparities. They said our opinion in Booker recognized that some departures from uniformity were a necessary cost of the remedy we adopted. So in order to let some district court judges in a crack cocaine scenario vary downward, they had to recognize that while some judges would vary downward, others would exercise... Has the Sentencing Commission said how this is supposed to work? Is there a U.S. Attorney manual that says how this is supposed to work, or it's really just everyone's just sort of doing it ad hoc? I'm really just asking because I've never been involved in sentencing as a lawyer. Or as a judge, only on review. And if you don't know now, that's fine. I'm just trying to understand how it works so I can know if it was done right or wrong. I think every judge that I've been in front of who's handled a number of these cases, and that's where you get the experience of the jurist comes into play, has a sense of what they think is the appropriate range, has a sense of what other judges do in the courthouse, has a sense of what other judges do in the country. It may not be reading every PSR, but they have a sense of what a certain case is worth and what the key factors are. They weigh those factors under 3553, they take the guidelines as a starting point, and they go from there. They disagree on certain policy points, which is what this district court judge does. He disagrees with what some others do. Perhaps at this point he's in a minority in the country, but he does feel, and he made factual findings, that this case was unique. This is sort of the bookend with Judge Millett's question about what does this factor mean under 3553 to avoid sentencing disparities. It's a little hard to know how to review or what to make of a statement when the district judge says, every case is unique. I don't want to look at your other cases. There's some comments about the relative junior status of those judges where, in fact, they were submitted opinions from very senior judges like Judge Hogan and Judge Lamberth.  Isn't that, in a way, per se, not conducting the analysis required by the last part of 3553 that you're supposed to consider sentencing disparities? You're supposed to make some kind of judgment by analogy, some kind of judgment, and he basically is saying no. What the court said was he didn't say I'm not familiar with those cases or I'm not looking at those cases. He said I am familiar with those cases. I tried a number of them and handled them, and I'm familiar with the others. I'm not going to go read the PSRs. I don't think that's my job, but I am familiar with them, and they are not analogous. He didn't say they are not analogous. He said every case is different. Every case is unique. He just seemed to say that is just an inquiry that I don't find helpful. Your Honor? Again, trying to figure out what our inquiry can be guided by. Could I direct the court to page 218 of the appendix, which is the part of the transcript that the court, I think, was referring to? It's page 38 of the transcript. I guess it's the 21st. I have page 42. It's 218. 1221, transcript, pages 37 to 38. It's 213, 214. Okay. The court says at the top of page 38, the overwhelming majority of the cases you cited are judges who were appointed by President Obama in the last three or four years and who have very limited experience in sentencing in these cases. Yes, you did cite one case from Judge Lamberth. You cited two from me that I know from personal knowledge are not at all analogous. And then he goes on to say, I'm not accusing you of anything wrong. The defense counsel says, no, I'm just saying they're not analogous. I interpret that as the court is saying I'm familiar with these cases. They're not analogous. And he's also adverting to the fact that in many cases he feels like he has more experience. So to me, he is saying that they are analogous. And I would emphasize that given the facts, particularly as I think Judge Millett pointed out, the absence of remorse, the absence of insight into his condition, and the sexual traveling, which is the big distinction between this case and the second case in Jenkins, which is the only case to find a guideline-range sentence here unreasonable, he, the judge, the district court was particularly focused on punishment and deterrence in protecting children, particularly the infants and toddlers. And so he felt that the unwarranted disparity factor was relatively less important than those factors in this particular case. Can I ask you about the waiver issue? What is your characterization of the Rule 11 colloquy? Your friend described it as ambiguous. Godoy says we have concern if it mischaracterizes the nature of the plea agreement. What's the government's view of what took place in the Rule 11 colloquy? This was a valid waiver, thank you, Your Honor. There is nothing here that indicates a mischaracterization of the valid written waiver, as was the case in Godoy. In Godoy, the judge said you have given up your right to appeal except you should come to believe after consulting with counsel that the court has done something illegal, such as imposing a period of imprisonment longer than the statutory maximum. Here, what the court said is you've given up your right to appeal except in limited circumstances. Those limited circumstances were not fleshed out. It's true. The court's colloquy under Rule 11 could have been a little bit more fulsome, but it was accurate. It was not a mischaracterization. What are we supposed to do with the relationship between the written waiver and the Rule 11 colloquy? Does one inform the other at all, or does the Rule 11 colloquy stand on its own in terms of our analysis? The Rule 11 colloquy should be read, I would think, in terms of the written waiver. Why? Because it's a knowing, intelligent, and voluntary waiver. What's the purpose of the Rule 11 colloquy in the first instance? To make sure in a personal voir dire by the judge of the appellant, not through the lawyer. Which suggests that there's some unease with the written agreement alone. We don't have complete confidence that the defendant may understand the written agreement. Isn't that right? I think that's probably fair. That would suggest that the Rule 11 colloquy stands on its own. Would you read for me the critical language that Judge Leon used in his colloquy? You may even. I have part of it. Here's the point. I'm going to read the part that's interesting to me. I'll follow up. You may even, under some limited circumstances, have a right to appeal the court's sentence, even though you're waiving your right to appeal, under the grounds of reasonableness. Now, is it likely that... You understand that, right? Defendant with three years of college education. Yes, Your Honor, I do. Understand what? I could understand it perfectly clearly to mean that I have a right, under limited circumstances, to appeal on the grounds of reasonableness. I can say, yeah, I understand that. That's grammatically what he said. That's the point. That's the reason I was going to get the question. Why should we read it in the context of the written agreement? Do you have case law out there that tells us that that's what we're supposed to do? I don't have that, Your Honor. Could I submit it to the court? I have one more question. And it is going back to how the description of the offense and the plea agreement that pegs the guidelines framework comes about within the government. And you mentioned that the... We know that one of the factors for enhancement was the inventory of images. Why was the possessed images that weren't themselves distributed included in the statement of offense? I thought the statement of offense, the distribution, would be a statement of the facts of the distribution, the charge of conduct. And isn't there some legal... I mean, it matters what's in the statement of offense, right? Well, the statement of offense, in this case, you'll recall that the government proffered... There were three times where there was an attempt at taking this plea. The first time was at arraignment. The magistrate judge said, no, we're just doing arraignment. The second time was in front of Judge Leon where there was a more fulsome statement of the offense. And Judge Leon ordered the government to take out all facts that didn't go directly to the plea. And so that may be why... And then it came back to him and he said, wait a minute. You still have some facts in here that go to possession that aren't really distribution facts that you're giving descriptions of offense. And he said he hesitated whether he would send that back again to have that taken out. And he didn't. But I'm just asking in terms of the logic of the government. And one of the things that I noticed that Judge Leon said, who is a very experienced judge, when he first said, you can't put in that statement of offense the information about his prior conduct with minors because it wasn't clear whether he was just bragging and making it up or whether there really was. And the government's investigation couldn't substantiate that. So he said, you have to take that out. And he said, that follows this person for the rest of his life. Wait, the statement of offense. So the question is, the government absolutely can prove conduct relevant to sentencing at sentencing. My question is, what's going on? Well, you didn't have to. I'm trying to understand. I don't think you're being fair to the government, honestly. Pardon? I don't think you're being fair to the government. I really don't. I mean, not like cosmically unfair. I just think that this argument is not unfair. I'm not making an argument. I'm asking you questions. As a representative for the United States of America. They agreed that this irrelevant conduct was accurate. I'm asking you a question. I'm not arguing with you. Yes, Your Honor. I'm sorry. I'm sorry if I did not make you disrespectful. And I think you're misunderstanding the perspective from which I come. I don't understand why, at this point, it's the government's burden to prove to this court relevant conduct that the parties agreed to, stipulated to, at sentencing. That seems to me to be unfair. And if the court is not saying that, then I apologize. I'm not. I'm asking you, and perhaps I'm unfairly asking you, to help me understand how you operate so that I can more effectively fulfill my responsibility. I'll try to be a better listener, Your Honor. I'm sorry if I've upset the court. So, my question is, what's at stake when the government puts something in the statement of offense, as opposed to in a description of related conduct, or doesn't put it in a clean agreement and simply proves it at sentencing? What is at stake? I don't know the answer to that, and I would like you to help me understand that. Off the top of my head, Your Honor, the obligation to prove relevant conduct does not occur until sentencing, as I understand it. And that's a preponderance standard at that point. And so, I think Judge Leon's point, which could be valid, is, well, you've agreed to the relevant conduct in the plea agreement, and you're agreeing to it at sentencing. Therefore, in the plea colloquy, do we really need to have it here again? I think that's a point that he might, and I think he had a concern about, as I understand it, the dissemination of the colloquy having, being perhaps additional prejudice in the transcript. I don't think, I didn't understand those concerns as, yeah, I'm, trial counsel's here with me, and my supervisor, and they're suggesting, and as I also recall, that the big thing that was taken out of the statement of offense was the, his bragging, well, I did say that. I did acknowledge that. You did say that, right. So the question, though, this is my question. One of the things Judge Leon said, and he's more experienced with these matters, probably, than most of us. He said, I'm concerned that the information in the statement of offense will travel with this individual for the rest of his life. Does that go into a sex offender registry? What does he mean by that? Is that made public? Is that part of the conviction that's on the public record? I don't know the answer to that. Okay. Because I'm just wondering what, if there's these three different points where the government could put information in the statement of offense within the plea agreement, not within the statement of offense, but elsewhere in the plea agreement, or not in the plea agreement, and at sentencing. I'm trying to answer that question. And if you can, I said, fine. And I'm taking you much further over your time. And I really appreciate your indulgence in supporting both of us in doing our jobs responsibly. It's my job to try to answer the Court's questions as best I can and to try to help the Court. And I am trying to do that, despite my prickly nature. So I apologize to the Court. If no further questions, we will submit and ask the Court to affirm. Thank you. Ms. Davis, we'll take three. Okay. In answer to the question about which cases are most like this one, I would point to United States v. Frye. In that case, the defendant said he sexually abused his daughters. And he sent videos and images to the undercover person in that case. And United States v. Essex, the defendant sentenced 42 months. In that case, the defendant agreed to meet the undercover for purposes of engaging in sexual acts with the undercover's reported 9-year-old daughter. I think especially Essex is very close to the facts in this case. And Frye was just a possession case, not a distribution one. And I think that I think it was a plea to possession, but I But he was convicted of possession. Right. He was convicted of possession. Not convicted of distribution. And that gets back to the original point that was brought up earlier in that Mr. Matea anticipated being sentenced or his guidelines being determined based on a possession standard as opposed to a distribution. And I think those are the two cases that are strongest. But again, I would point the court to the sentencing memorandum that was in the joint appendix. And I believe the cases start on page 150 of the joint appendix. And there's numerous cases cited. Although a lot of them are possession, a lot of them underline facts that involve distribution. And if there's no further questions, I would ask that this sentence be vacated and the case remanded. Ms. Davis, you were appointed by the court to represent the appellate in this case. And the court thanks you for your assistance. The case is submitted.
judges: Griffith, Millett, Pillard